COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Alston and Decker
Argued in Richmond, Virginia

MARK DWAYNE BISHOP

                                        MEMORANDUM OPINION* BY
v.       Record No. 1635-17-2           JUDGE ROBERT J. HUMPHREYS
                                          AUGUST 28, 2018

ALBEMARLE COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Christopher C. Graham (Eustis & Graham, PC, on brief), for
appellant.

Amanda E. B. Farley, Senior Assistant County Attorney
(B. Stephanie Commander, Guardian *ad litem* for the minor child;
Albemarle County Attorney's Office, on brief), for appellee.


Mark Dwayne Bishop ("Bishop") appeals an order terminating his parental rights of his

child, H.N.[1]  Bishop argues that the Circuit Court of Albemarle County ("circuit court") erred by

abusing its discretion in two ways.  First, by denying his motion to reject the Albemarle County

Department of Social Services' ("DSS") petition to change H.N.'s foster care permanency plan

from "return home" and "relative placement" to "adoption."  Second, by denying his motion to

reject DSS's petition to terminate his parental rights.  For the following reasons, we affirm.

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] See Willoughby v. Albemarle Dep't of Soc. Servs., No. 1619-17-2, decided this day,
affirming the termination of parental rights of H.N.'s biological mother.

UNPUBLISHED

Boatright v. Wise Cty. Dep't of Soc. Servs., 64 Va. App. 71, 76, 764 S.E.2d 724, 727 (2014) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003)). So viewed, the evidence is as follows.

In 2009, Bishop was convicted by a jury of the rape and aggravated sexual battery of his biological child, K.G.K. He was sentenced to twenty-seven years in prison. In early 2016, another of Bishop's biological children, H.N., entered the foster care system via emergency removal order. H.N. was placed in two foster homes before a kinship placement was available with Mike and Jessica Farmer, cousins of H.N.'s biological mother. H.N. "describes with joy and pride the relationships and rituals she has established with her cousins." Additionally, the circuit court heard testimony from Mr. Farmer demonstrating his commitment to providing a permanent home for H.N.

The Court Appointed Special Advocates for Children Court Report ("CASA report") prepared by H.N.'s case workers and admitted into evidence noted that H.N. was "elated by the news" that she was placed with the Farmers. H.N. referred to Mrs. Farmer as "mom" and told her case worker that she enjoyed living with her cousins. Furthermore, the CASA report indicates that the Farmers "demonstrated their ability to provide a safe, stable and loving home for H.N."

Ellen Bishop ("Ms. Bishop"), Bishop's mother, testified at the termination of parental rights hearing that were her son to win his appeal regarding his rape conviction and be released from prison, he would return to her home and she would allow him to be around his children. Ms. Bishop testified that she had no contact with H.N. for the first five or six years of H.N.'s life because paternity was at issue. But, during the five or six years before H.N. was placed in foster care, Ms. Bishop saw H.N. "often." Ms. Bishop said that she did not file for custody because she believed the foster care case would determine custody and that between the time H.N. started

having contact with her and the time H.N. was removed there were only occasional weekend visits with H.N. at Ms. Bishop's home. Ms. Morris, a social care worker, however, testified that she had contact with Ms. Bishop only three times in 2016.

The circuit court terminated Bishop's parental rights and approved the plan goal of adoption. Regarding the possibility of Bishop returning to Ms. Bishop's house, the circuit court stated, "Not only do I find that would not be in H[.N.]'s best interest, but I find that would be damning to H[.N.]." The fact that H.N. is "happy where she is and doing as well as she is is extremely important to the Court." The circuit court noted that "it is too great a risk if Mr. Bishop was to come home or even the fact psychologically to H[.N.] that she's living with his mother and having to make yet another adjustment, I find would be too much and not in her best interest."

Bishop first argues that the circuit court abused its discretion "in denying [his] motion to reject Appellee's petition to change the foster care permanency plan from 'return home' and 'relative placement' to 'adoption' when Appellant provided sufficient evidence to support a finding that at least one close relative with whom H.N. had a prior relationship was willing and qualified to be considered for placement."

In a challenge to the circuit court's decision to terminate residual parental rights,

> [T]his Court presumes that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. The circuit court has broad discretion in making the decisions necessary to guard and to foster a child's best interests. Therefore, in a case involving termination of parental rights, [t]he trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.

Eaton v. Wash. Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 324, 785 S.E.2d 231, 235 (2016) (internal quotations and citations omitted) (second alteration in original). Code § 16.1-283(A) "requires that the court 'give a consideration to granting custody to relatives of the child' prior to

terminating parental rights and placing the child in the custody of social services." Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) (quoting Code § 16.1-283(A)). "[T]he Department [of Social Services] has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 131, 409 S.E.2d 460, 465 (1991). However, Code § 16.1-283 provides that a trial court may transfer custody of a child to the child's relative if that relative:

> (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect . . . .

Code § 16.1-283(A1).

Here, the record indicates that the circuit court thoughtfully considered relative placement for H.N. and found that placement with Ms. Bishop was not in H.N.'s best interests. The circuit court heard the testimony of Mr. Farmer, also a relative of H.N.'s, who testified that H.N. was doing very well at his home. Mr. Farmer testified that he was willing and qualified to care for and provide a suitable home for H.N. The circuit court also heard Ms. Bishop's testimony, noted above, that she would allow Bishop to live with her and to contact his children if he were released from prison, and, as also noted, the circuit court considered this possibility a great risk and that yet another living adjustment would be damaging in itself and "not in [H.N.'s] best interest" considering that H.N. is "happy where she is and doing as well as she is."

Accordingly, we do not have to *presume* that the circuit court thoroughly weighed the evidence and considered the child's best interests—the record indicates that the circuit court did

exactly that. Accordingly, we find no miscarriage of justice that would require reversal of the circuit court's decision.

Second, Bishop argues that the circuit court abused its discretion "in denying [his] motion to reject Appellee's petition to terminate his parental rights when Appellant presented substantial evidence that it was in the child's best interest to be placed with relatives, and when there is a statutory preference under the Code of Virginia for placing children with relatives as opposed to terminating parental rights." The existence of this preference Bishop evidences with a cite to the Code: "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283. Though Bishop immediately admits that "nothing in the statute or case law establishes a specific hierarchy of placement preferences when a child is in foster care," he claims an implicit presumption that placement with close relatives is preferable.

Regardless, because the circuit court did not err in finding that placement with H.N.'s grandmother was not in H.N.'s best interests, we need not address the sufficiency of the evidence to demonstrate whether it was in the child's best interests to be placed with relatives. As noted above, the circuit court properly considered all relative placement options for H.N. and did not abuse its discretion in granting DSS's petition to change the foster care permanency plan from "relative placement" to "adoption."

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.